UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONDRA LEWIS,

                Plaintiff,        Civil Action No. 18-11270
                                        Honorable David M. Lawson
v.                                 Magistrate Judge David R. Grand

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 15]

Plaintiff Tondra Lewis ("Lewis") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #14, #15), which have been referred to the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I. RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Lewis is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #15**) be **DENIED**, Lewis's Motion for Summary Judgment (**Doc. #14**) be **GRANTED IN PART** to the extent it seeks remand, and **DENIED IN PART** to the extent it seeks

an award of benefits and that, pursuant to 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II. REPORT

### A. Background

Lewis was 51 years old at the time of her amended alleged onset date of July 18, 2016, and at 5'2" tall weighed approximately 190 pounds during the relevant time period. (Tr. 224). She has a high school education and, prior to filing her instant applications for DIB and SSI, had most recently worked for eight years as a monitor or supervisor (housekeeper) for the Salvation Army. (Tr. 37). She alleges disability primarily as a result of gout, arthritis in the knees, and lower back problems. (Tr.224).

After Lewis's application for DIB and SSI was denied at the initial level on January 16, 2016 (Tr. 76, 77), she timely requested an administrative hearing, which was held on March 30, 2017, before ALJ Lauren Burstein (Tr. 26-56). Lewis, who was represented by attorneys Alari Adams and Andrew S. Youngman (Tr. 13), testified at the hearing, as did vocational expert John N. Stokes (*Id.*). On June 28, 2017, the ALJ issued a written decision finding that Lewis is not disabled under the Act. (Tr. 13-21). On March 6, 2018, the Appeals Council denied review. (Tr. 1-8). Lewis timely filed for judicial review of the final decision on April 23, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Lewis's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B. The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps.... If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found that Lewis is not disabled under the Act. At Step One, the ALJ found that Lewis has not engaged in substantial gainful activity since July 18, 2015, the alleged onset date. (Tr. 16). At Step Two, the ALJ found that she has the severe impairments of degenerative arthritis in her knees, hips, and lower back; gout; and obesity. (*Id.*). At Step Three, the ALJ found that Lewis's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Lewis's residual functional capacity ("RFC"), finding she is capable of performing light work, with the following additional limitations: she can sit for two hours at a time and for four-five hours of an eight-hour workday, can stand and/or walk for up to two hours at a time and for six to eight hours in a workday; she can occasionally stoop, balance, and climb ramps and stairs, but cannot kneel, crouch, crawl, or climb ladders, ropes, and scaffolds; and she should avoid hazards such as unprotected heights, operating hazardous machinery, or operating motor vehicles. (Tr. 17). At Step Four, the ALJ concluded, based in part on testimony provided by the vocational expert ("VE") in response to hypothetical questions, that Lewis is capable of performing her past relevant work as a housekeeper, as usually performed. (Tr. 19). Alternatively, at Step Five, the ALJ concluded that, considering her age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Lewis can perform at the light level, including office helper (155,000 jobs); small products assembler (193,000); and machine feeder (74,000 jobs). (Tr. 20). As a result, the ALJ concluded that Lewis is not disabled under the Act. (*Id.*).

**C. Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under the statute is limited in that the

4

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in her case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or the court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in the written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D. Analysis**

As explained in more detail below, the only issue in this case is whether, in formulating the RFC, the ALJ's failure to account for the standing and walking restrictions set forth in the consultative examiner's opinion is harmless error. For purposes of context, the Court will begin its analysis with a discussion of the consultative examiner's opinion and the ALJ's formulation of the RFC, the VE's testimony in response to the ALJ's hypotheticals based on that RFC, and the ALJ's Step Five Finding.

*1. The Medical Opinion and the ALJ's RFC Finding*

The Agency's consultative examiner, Dr. Cynthia Shelby-Lane, M.D. offered the only medical opinion in this case as to Lewis's physical impairments and limitations. That opinion stated, in relevant part, that, without interruption, Lewis could sit for two hours at a time, stand for one hour at a time, and walk for one hour at a time. (Tr. 320). Further, within an 8-hour day, she could sit for a total of four to five hours, stand for three to four hours, and walk for three to four hours. (*Id.*). Despite assigning "significant weight" to this opinion (Tr. 18), and without any explanation, the ALJ adopted a less stringent RFC, providing that Lewis could "sit for two hours at a time and for four-five hours of an eight-hour workday, [and could] stand and/or walk for up to two hours at a time and for six to eight hours in a workday." (Tr. 17).[1] The following chart summarizes the distinctions between Dr. Shelby-Lane's opinion and the ALJ's RFC:

---

[1] While unnecessary to the resolution of the parties' instant motions, the Court concurs with Lewis that it is worth pointing out that the record contains medical evidence that at least arguably supports Dr. Shelby-Lane's opinions, and which the ALJ should have reconciled against those opinions if she was not going to adopt them. For instance, Lewis went to the Emergency Room on September 22, 2015 due to foot and knee pain that she rated a 9/10. (Tr. 287). She had woken up the day before unable to walk. (*Id.*). About a week later, her knees were swollen, and she underwent X-Rays which showed "moderate osteoarthritis involving mostly medial compartment of tibia/femoral joint bilaterally." (Tr. 298, 313). She received injections for "Arthrocentesis major joint." (Tr. 298). Additional X-Rays of Lewis's left knee from March 2016 showed degenerative

6

|       | Dr. Shelby-Lane |  | ALJ |  |
|-------|-----------------|--|-----|--|
|       | Hrs. at a time | Hrs. in a in a day | Hrs. at a time | Hrs. in a in a day |
| Sit   | 2 | 4-5 | 2 | 4-5 |
| Stand | 1 | 3-4 | 2 | 6-8 |
| Walk  | 1 | 3-4 | 2 | 6-8 |

The Commissioner concedes that the RFC adopted by the ALJ "does not account for Dr. Shelby-Lane's opinion that [Lewis] could only stand for one hour at a time and walk for one hour at a time (*compare* Tr. 17 *with* Tr. 320)" and that, "given this concession, the Commissioner agrees that the ALJ erred by not explaining why she did not adopt this part of Dr. Shelby-Lane's opinion (*see* Tr.18-19). *See* Plaintiff's Brief (Br.) at 5-11." (Doc. #15 at 5). The parties dispute whether this error was harmless, a question that requires a detailed review of the hypothetical questions the ALJ posed to the VE, and the VE's responsive testimony.

2. *The Three Hypotheticals Posed to the VE and the VE's Testimony*

The ALJ posed three hypotheticals to the VE, each assuming a range of light work. Following are the salient portions of those three hypotheticals:

> **Q.** Assume a hypothetical individual of claimant's age, education and with the past jobs you described. Further, assume that this individual is limited to light work. Can sit for up to two hours at a time and up to four to five hours a day. Can stand up to two hours at a time and stand or walk up to two hours at a time in [sic][2] six to eight hours a day. . . .
>
> \* \* \*
>
> **Q.** Assume the same hypothetical as above, except this individual would modify the sit/stand option. Consider stand for up to 30 minutes in each position. . . .

---

changes with interval progression in the lateral compartment. (Tr. 380). Another X-Ray showed "marginal spurring". (Tr. 387). X-Rays of the lumbosacral spine showed some facet sclerosis on arthritis at L5-S1, as well as "some joint space narrowing bilateral hips." (Tr. 403). Into late 2016 and early 2017, Lewis presented with swollen knees, and continued to report that her knee pain was "aggravated by walking and standing," and she received Toradol injections. (Tr. 484, 497).

[2] It seems clear that the ALJ meant to say "and up to" rather than "in", as that is consistent with the rest of her questioning and the use of the word "in" in this sentence makes no sense.

7

> *  *  *
>
> **Q.** And the same hypothetical as above, except this individual would be of[f] task at least 20 percent of the day, due to need to lie down.

(Tr. 48-52).

In response to the first hypothetical, the VE stated that this person could perform Lewis's past relevant work as a housekeeper, but only as the job is "customarily" or "generally" performed, not as Lewis actually performed it. (Tr. 49, 52-53). He also stated that the hypothetical person would not be able to perform Lewis's previous position of housekeeping cleaner. (Tr. 50, 52-53). Further, he testified that the hypothetical person also could perform the jobs of small products assembler, office helper, and machine feeder. (Tr. 49, 51). In response to the second hypothetical, the VE testified that this person could not perform Lewis's past work but could perform the small products assembler and machine operator jobs, and the additional job of information clerk. (Tr. 50-51). In response to the third hypothetical, the VE testified that this "individual would be incapable of working a full 8-hour day and 40-hour week." (Tr. 52).[3]

### 3. The ALJ's Step Four and Five Findings

At Step Four, the ALJ found that Lewis could perform her past relevant work as a housekeeper, as that work is "usually" performed. (Tr. 19). She then went on to Step Five, explaining:

> In the alternative [to the Step Four finding], the claimant can be denied at step 5 of the sequential method of evaluation. She is "closely approaching advanced age" with a high school education. The vocational expert testified that the claimant's two past jobs were skilled and semiskilled. The housekeeper job was skilled, and the job of home attendant was semiskilled.

---

[3] In her briefs, Lewis refers to the VE's testimony in response to these hypotheticals as "ambiguous and caught in cross talk with the ALJ." (Doc. #14 at 15-16; Doc. #17 at 2). While the testimony is slightly hard to follow because the VE appears to jump back and forth between responding to the first and second hypotheticals, the Court does not find the VE's testimony to be ambiguous.

8

> The vocational expert further testified that a person such as the claimant and with the aforementioned restrictions could do the jobs of office helper, small products assembler, and machine feeder. In addition, Mr. Stokes testified that nationally, there exist about 155,000 officer helper jobs, about 193,000 small products assembler jobs and about 74,000 machine feeder jobs, for a person such as the claimant. He cited specific references for these jobs in the Dictionary of Occupational Titles, and they were given as follows: 239.567-010, 706.684-022, and 819.686-0110, respectively.

(Tr. 20).

### *4. The ALJ's Error Was Not Harmless*

A claimant's RFC is "the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). "In formulating [the RFC], the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 Fed.Appx. 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). The determination of the claimant's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(e), 416.927(e). Here, Lewis contends, and the Commissioner concedes, that the ALJ erred when she accepted the standing/walking limitations imposed by Dr. Shelby-Lane, and then, without explanation, incorporated less restrictive limitations in her RFC finding. (Doc. #14 at 6). Because the RFC is less stringent than the medical opinion on which it was supposedly based, this was a clear error and violation of the Agency's own rules and regulations.

The only issue before the Court is whether this error by the ALJ was "harmless"; if so, remand is not required. The Commissioner's only substantive argument is that the ALJ's second hypothetical question to the VE, *see supra* at 7, contains restrictions that are even more stringent than those determined by Dr. Shelby-Lane, and that because the VE testified that a substantial

9

number of jobs exist that such a hypothetical person could perform, so, too, could Lewis perform those jobs given her less stringent restrictions:

> Plaintiff [] is wrong to argue that this error prejudiced her. *See* Br. at 11-18.
>
> As plaintiff admits, Br. at 13, the ALJ asked the vocational expert (VE) a hypothetical that assumed a need to change positions every thirty minutes (Tr. 50). This limitation exceeds Dr. Shelby-Lane's opinion that plaintiff could stand up to one hour at a time, and walk no more than one hour at a time (*see* Tr. 320). *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005) (declining to remand where VE hypothetical is more limited than RFC finding). The VE, in turn, testified that such a restriction would not prevent plaintiff from doing the jobs of small products assembler and machine feeder that the ALJ relied on at step five (Tr. 20, 50-51). These jobs exist in significant numbers and support the ALJ's non-disability determination (*see* Tr. 49 (testifying there are 193,000 small products assembler jobs, and 74,000 machine feeder jobs at the national level), Tr. 51 (affirming these numbers despite the additional sit/stand option)). *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs nationally is sufficient to support ALJ's step-five decision). This much is undisputed, *see* Br. at 13-18 (conceding that the VE testified the jobs could be done with the sit/stand limitation, and not questioning the number of jobs the VE identified), and is enough to affirm the ALJ's decision. *See Dyer v. Soc. Sec. Admin.*, 586 F. App'x 422, 429 (6th Cir. 2014) (VE testimony can be substantial evidence that supports ALJ decision).

(Doc. #15 at 5-7) (footnote omitted).

"A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (citing *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987)). It is also well-established that errors at Step Four are considered harmless when the ALJ makes an appropriate alternative determination at Step Five and finds that a claimant can perform work that exists in significant numbers in the national economy. *Gaskin v. Comm'r of Soc. Sec.,* No. 14-10859, 2015 WL 268335, at *4 (E.D. Mich. Jan. 21, 2015). The problem with the

Commissioner's argument, however, is that it is based on a mischaracterization of the ALJ's second hypothetical question to the VE.

Whereas the Commissioner characterizes the second hypothetical as imposing "the thirty-minutes sit/stand restriction" (Doc. #15 at 6, n.3; *see also id.* at 7), in actuality, the second hypothetical contains no such restriction. Moreover, contrary to the Commissioner's argument, it is not clear that the second hypothetical imposes a walking limitation that is more restrictive than the one imposed by Dr. Shelby-Lane. Indeed, the transcript reflects the ALJ saying only the following for her second hypothetical:

> **Q.** Assume the same hypothetical as above, except this individual would modify the sit/stand option. Consider stand for up to 30 minutes in each position. . . .

(Tr. 50).

Perhaps instead of "Consider stand . . .", the ALJ intended to (or even did) say, "Could sit or stand for up to 30 minutes [at a time] in each position," but the Court cannot decide this with certainty for a few reasons. First, the transcript simply does not reflect such a statement. Second, immediately before the sentence in question, the ALJ made a reference to modifying "the" "sit/stand option," but the prior hypothetical did not include such a limitation to be modified. Third, and relatedly, one aspect of the first hypothetical was a limitation that the person could "stand or walk up to two hours at a time" (Tr. 48), and it is unclear whether the ALJ intended to modify *that* component of the RFC in her second hypothetical. Finally, even if one reads "Could sit or stand . . ." into the ALJ's second hypothetical, as the Commissioner seems to do, the hypothetical would still include a walking restriction less stringent than the one hour limit imposed by Dr. Shelby-Lane, which the ALJ adopted.

11

For all of these reasons, the Court finds that the ALJ's second hypothetical question to the VE is too ambiguous for the Court to conclude that it reflects restrictions more stringent than the ones determined by Dr. Shelby-Lane. Accordingly, the VE's testimony in response to that hypothetical cannot constitute substantial evidence in support of the ALJ's Step Five finding or her overall decision that Lewis is not disabled. On remand, the ALJ should determine a proper RFC for Lewis under the familiar standards, *see supra* at 9, and then ensure that the hypothetical questions to the VE incorporate such limitations. The ALJ should also consider the post-hearing rebuttal vocational evidence proffered by Lewis. (Tr. 277-80).

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #15**) be **DENIED**, Lewis's Motion for Summary Judgment (**Doc. #14**) be **GRANTED IN PART** to the extent it seeks remand, and **DENIED IN PART** to the extent it seeks an award of benefits and that, pursuant to 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: July 1, 2019             s/David R. Grand
Ann Arbor, Michigan        DAVID R. GRAND
                                         United States Magistrate Judge

### NOTICE

The parties to the action may object to and seek review of the Report and Recommendation, but are required to act within fourteen (14) days of service of a copy thereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–

50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to the Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon the magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 1, 2019.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager